IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUB-TECHNICAL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 2:06-cv-1265 |
| v. ) | Judge Thomas M. Hardiman |
| ) | |
| THE AMERICAN COAL COMPANY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Plaintiff Sub-Technical, Inc. (Sub-Technical) filed a breach of contract action in state court on August 23, 2006. On October 3, 2006, Defendant American Coal Company (American Coal) removed the case to federal court pursuant to 28 U.S.C. §§1441 and 1446(b). Presently before the Court is Defendant's motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) or, in the alternative, to transfer the case for improper venue under Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. §1406(a).

**I.    Factual Background**

Plaintiff Sub-Technical is a Pennsylvania corporation with its principal place of business in Mars, Pennsylvania. Defendant American Coal is a Delaware corporation with its principal place of business in Ohio. American Coal also maintains a place of business in Galatia, Illinois. American Coal does not maintain a place of business, bank accounts, real estate, or any employees in Pennsylvania.

Sub-Technical specializes in grouting that utilizes a broad range of polyurethane and cementitious grouts for ground and water control in the mining and civil industries. In approximately November 1998, Sub-Technical began to receive verbal and written purchase orders for supplies and materials for work at the Galatia and Millennium Mines, owned by American Coal and located in southern Illinois. On or about November 24, 1998, Sub-Technical received from American Coal a document dated November 16, 1998 entitled "Intermittent Work Contract" (Contract I).

On or about October 18, 2002, Sub-Technical received at its Pennsylvania office a second Intermittent Work Contract (Contract II) dated October 15, 2002. Contracts I and II contemplated by their express terms that there would be a series of purchase orders for goods and services placed by American Coal with Sub-Technical. Of the $240,439.40 that Sub-Technical alleges is the total amount of materials, services, and labor it provided to American Coal under Contract II, American Coal paid $41,762.90 to Sub-Technical at its Pennsylvania address.

On or about August 23, 2003, a small fire occurred in the Millennium Mine, which is relevant to the contract dispute because American Coal claims that any amount due to Sub-Technical should be offset by costs related to the fire. American Coal expressed this belief in letters dated June 1, 2004 and February 21, 2005, both of which responded to invoices that Sub-Technical had sent to American Coal. American Coal mailed the first letter to Sub-Technical's Pennsylvania office and appears from the record to have e-mailed the second to "Dori@subtechnical.com." The first letter offered a "resolution" to the dispute over unpaid invoices that would have American Coal pay $59,625.09. The second letter repeated this offer. Impliedly rejecting these offers, Sub-Technical sent additional invoices to American Coal on

September 9, 2005 and August 16, 2006. When it did not receive payments, Sub-Technical filed the instant action on August 23, 2006, alleging that American Coal owes it the entire balance plus finance charges totaling $331,437.12, together with continuing interest and costs of suit.

## II.   Legal Standard

In deciding a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), courts accept as true the allegations in the complaint. *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996). However, "the plaintiff bears the burden of establishing either that the cause of action arose from the defendant's forum-related activities (specific jurisdiction) or that the defendant has 'continuous and systematic' contacts with the forum state (general jurisdiction)." *Mellon Bank (East) v. DiVeronica Bros., Inc.*, 983 F.2d 551, 554 (3d Cir. 1993) (quoting *Bane v. Netlink, Inc.*, 925 F.2d 637, 639 (3d Cir. 1991)). This burden may be met through affidavits or other competent evidence. *Dayhoff Inc.*, 86 F.3d at 1302. Once the plaintiff establishes a *prima facie* case in favor of personal jurisdiction, the burden shifts to the defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 150 (3d Cir. 1992) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1986)).

"A district court sitting in diversity applies the law of the forum state in determining whether personal jurisdiction is proper." *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 150 (3d Cir. 1996) (citing Fed. R. Civ. P. 4(e)). Pennsylvania's long-arm statute provides that a court may exercise personal jurisdiction to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment. *Id.* (citing 42 Pa. Cons. Stat. Ann.

§5322(b) (1981)). Pursuant to the Due Process Clause, "in personam jurisdiction may be asserted over a nonresident so long as the defendant has 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Telcordia Tech Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 177 (3d Cir. 2006) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

On the question of the minimum contacts necessary to establish specific personal jurisdiction, the Court of Appeals has set forth the following standard:

> The concept of minimum contacts varies according to the nature of the interactions and type of jurisdiction asserted. Specific jurisdiction is established when a nonresident defendant has "purposefully directed" his activities at a resident of the forum and the injury arises from, or is related to, those activities. *General Elec. Comp. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001). In determining jurisdiction for a breach of contract, the district court must consider the totality of the circumstances. *Remick v. Manfredy*, 238 F.3d 248, 256 (3d Cir. 2001).

*Telcordia Tech Inc.*, 458 F.3d at 177 (footnote omitted). To satisfy the more demanding requirements of general personal jurisdiction, a defendant's forum activities must be "extensive" and "substantial" in order to be considered continuous and systematic. *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987). Courts consider the following factors in assessing whether general jurisdiction exists:

> (1) is the defendant incorporated or licensed to do business in Pennsylvania; (2) has the defendant ever filed any tax returns with the Commonwealth of Pennsylvania; (3) does the defendant file administrative reports with any agency or department of the Commonwealth; (4) does the defendant regularly purchase products or supplies within Pennsylvania for use in its business outside of the state; (5) does the defendant own land or property within the state; (6) does the defendant advertise in Pennsylvania; and (7) does the defendant maintain an agent in Pennsylvania.

*Brown v. AST Sports Sci., Inc.*, No. Civ.A. 02-1682, 2002 WL 32345935, at *4 (E.D. Pa. June

28, 2002) (citing *Wims v. Beach Terrace Motor Inn, Inc.*, 759 F.Supp. 264, 269 (E.D. Pa. 1991)).

In deciding a motion to transfer for improper venue pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. §1406(a), courts look to 28 U.S.C. §1391, which provides:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

*Id.* §1391(a). Where the defendant is a corporation, the defendant is "deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." *Id.* §1391(c).

## III.   Analysis

### A.   *Dismissal for Lack of Personal Jurisdiction*

To establish general jurisdiction, Sub-Technical must show that American Coal's activities in Pennsylvania were of a "continuous and systematic nature" regardless of whether there is any nexus between the instant action and the forum. *Helicopteros Nacionales de Colombia, SA v. Hall*, 466 U.S. 408, 416 (1984). Sub-Technical alleges only one of the seven factors that courts use to determine general jurisdiction, *viz.*, that "the defendant regularly purchase[s] products or supplies within Pennsylvania for use in its business outside of the state." *Brown*, 2002 WL 32345935, at *4. Sub-Technical fails to establish even this criterion, however, because the evidence it offers is limited to American Coal's course of dealing with Sub-

Technical alone from 1999 through 2003, even if it did include "eight separate and distinct" purchase orders. Pl.'s Response Br. at 4. Nothing in the record reveals any of American Coal's activities in Pennsylvania other than this alleged purposeful availment. But "purposeful availment" is not the test for general jurisdiction where there is no evidence of "extensive" or "substantial" regularity. *See Provident Nat'l Bank*, 819 F.2d at 437. Further, American Coal does not maintain a place of business, bank accounts, real estate, or any employees in Pennsylvania. Therefore, the Court finds that Sub-Technical cannot establish general jurisdiction over American Coal.

As the parties acknowledge, the absence of general personal jurisdiction does not conclude the inquiry because the Court must consider whether specific personal jurisdiction exists. To assert specific jurisdiction over American Coal, the Court must find by a preponderance of the evidence that American Coal "'purposefully directed' [its] activities at a resident of the forum and the injury arises from, or is related to, those activities." *Telcordia Tech Inc.*, 458 F.3d at 177 (citation omitted). American Coal first argues that the "sole allegation bearing on [its] contacts with Pennsylvania" is found in one line from Sub-Technical's complaint stating the existence of a contract between the parties; however, the Court may look beyond the contract itself in deciding a Rule 12(b)(2) motion for dismissal of a contract claim. *See Dayhoff Inc.*, 86 F.3d at 1302.

American Coal next argues that the "majority of 'contacts' that Plaintiff avers American Coal may have had with Pennsylvania should be disregarded under the specific jurisdiction analysis because they do not relate to Plaintiff's claim." Def.'s Reply Br. at 3. What American Coal characterizes as "majority of contacts" essentially are contacts related to Contract I, which

the Court assumes without deciding are *not* related to the instant action.[1] However, even focusing solely on Contract II, out of which Sub-Technical's claim indubitably arises, Sub-Technical has made a *prima facie* showing that American Coal has contacts with Pennsylvania, related solely to Contract II, that are sufficient to confer jurisdiction in this Court.

Under *Mellon Bank (East) v. Farino*, 960 F.2d 1217 (3d Cir. 1992), the requisite contacts "may be supplied by the terms of the agreement, the place and character of prior negotiations, contemplated future consequences, or the course of dealings between the parties." *Id.* at 1223. In the instant case, the terms of Contract II itself provide that it would remain in effect for three years unless terminated sooner, thus "contemplat[ing] significant ties with the forum." *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 483 (3d Cir. 1993). During this period, Sub-Technical would perform pursuant to "future work orders and purchase orders issued by" American Coal. Thus, an ongoing course of dealing exists between American Coal and a business located in the forum state, supported by Sub-Technical's allegation in its complaint—which the Court must treat as true—that American Coal has in its possession voluminous underlying purchase orders and corresponding invoices related to Contract II. Significantly, Sub-Technical was the contractor in this relationship, whose customized products and services American Coal sought and requested for its mine operations. *See* Eric W. Smith V.S. at ¶¶5-6, 12. In fact, American Coal admitted that it "initiated its orders," Def.'s Reply Br.

---

[1] In *Vetrotex*, discussed in greater detail *infra*, the Court of Appeals disregarded contacts from the 1980s but did regard the first of two supply agreements executed in 1991 and 1992, respectively, in deciding whether the district court had jurisdiction over the defendant in an action arising only out of the second supply agreement. 75 F.3d at 151, 153. In all likelihood, then, Contract I is more akin to *Vetrotex*'s "Supply Agreement I" than it is to *Vetrotex*'s "1980s negotiations," *id.* at 153, but again, this Court does not so hold explicitly because doing so is unnecessary to the disposition of this motion.

at 4, and the fact that it did so is significant because it was American Coal that "reach[ed] out beyond one state and create[d] continuing obligations with citizens of another state." *Remick*, 238 F.3d at 257 (quoting *Burger King*, 471 U.S. at 473).

American Coal's best argument is based on *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Products Co.*, 75 F.3d 147 (3d Cir. 1996), but a close reading of that case reveals that it is distinguishable from the case at bar. In *Vetrotex*, the Court of Appeals held that the non-resident corporate defendant, which was the purchaser in a breach of contract action, had not "'purposefully availed itself' of the privilege of doing business in Pennsylvania for purposes of establishing the 'minimum contacts' required for specific jurisdiction." *Id.* at 153. Important to the Court's decision were the following factors:

> For instance, this is not a case where the defendant solicited the contract or initiated the business relationship leading up to the contract. *Compare Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217 (3d Cir. 1992). Nor is this a case where the defendant sent any payments to the plaintiff in the forum state, *compare North Penn Gas v. Corning Natural Gas*, 897 F.2d 687, 690-91 (3d Cir. 1990), or where the defendant engaged in extensive post-sale contacts with the plaintiff in the forum state. *Compare Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 700 (3d Cir. 1990).

*Id.* at 152-53 (parenthetical omitted). The Third Circuit has since made it clear that *Vetrotex* must be read "[i]n light of [its] limiting language." *Remick*, 238 F.3d at 257. In light of this admonition, the Court finds jurisdiction over American Coal based on all three of the limiting factors. First, unlike *Vetrotex*, here American Coal solicited *and* initiated the business relationship leading up to Contract II. Second, American Coal sent at least one payment in performance of Contract II to Sub-Technical's Pennsylvania address. Third, American Coal made two offers to resolve this very contractual dispute based on the reduction of fire-related

8

expenses from the owed balance, which constitute post-sale contacts with Sub-Technical.[2] These facts, when viewed under the "totality of the circumstances," *Telcordia Tech Inc.*, 458 F.3d at 177, "involved more entangling contacts than the mere 'informational communications' at issue in *Vetrotex*," *Remick*, 238 F.3d at 256, such that American Coal "reasonably anticipate(d) being haled into" a Pennsylvania court. *Telcordia Tech Inc.*, 458 F.3d at 179 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Finally, American Coal has not "present[ed] a compelling case that the presence of some other considerations would render jurisdiction unreasonable" to defeat Sub-Technical's *prima facie* showing. *Carteret Sav. Bank*, 954 F.2d at 150 (citation omitted). In fact, American Coal does not make this argument at all. Nor does American Coal argue that exercising jurisdiction would not "comport with fair play and substantial justice." *Telcordia Tech Inc.*, 458 F.3d at 177. For the foregoing reasons, the Court cannot dismiss this action for lack of personal jurisdiction.

*B.     Transfer for Improper Venue*

Because the Court has determined that it has jurisdiction over American Coal, the Western District of Pennsylvania is a proper venue for this action because American Coal, a corporate defendant, is "deemed to reside in any judicial district in which it is subject to personal jurisdiction . . . ." 28 U.S.C. §1391(a)(1), (c). American Coal argues that it "does not reside in

---

[2] Even if these post-sale contacts are not "extensive," the Court of Appeals has held that "[m]ail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction." *Grand Entm't Group, Ltd.*, 988 F.2d at 482. It could be argued that applying such a rule in the instant case discourages the judicial policy favoring settlements. The "settlements" in this case, however, were mailed by American Coal to Sub-Technical a full two years and one year, respectively, before the filing of the present action. In any event, even if the Court did not count these post-sale contacts, this case still differs markedly from *Vetrotex* because of the other two factors.

9

the Western District of Pennsylvania." But, so long as the Court had personal jurisdiction over American Coal at the time this action commenced, this argument is plainly contrary to the mandate of 28 U.S.C. §1391(c). It is thus unnecessary for the Court to address American Coal's arguments under §1391(a)(2) and (a)(3), which merely provide for *additional proper* venues. Accordingly, the Court cannot transfer the action for improper venue.

Finally, in its reply brief, American Coal states that it "has not moved to transfer for *forum non conveniens*." The Court construes this statement to mean that American Coal is not moving to transfer under 28 U.S.C. §1404(a) which, unlike §1406(a), is used only when the transferor court is a proper venue. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995). Dismissals on grounds of *forum non conveniens* differ from §1404 transfers, *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981), but American Coal's statement must have meant to refer to the statutory transfer because the proper recourse for *forum non conveniens* is only dismissal, not transfer. *See* 15 Wright & Miller, *Fed. Prac. & Proc. Juris.2d* §§3828 & 3841 (Supp. 2006). Accordingly, the Court will not analyze the propriety of a §1404 transfer.

## IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss or, in the alternative, transfer to another federal district, will be denied in its entirety.

An appropriate Order follows.

November 17, 2006

                                          Thomas M. Hardiman
                                          United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUB-TECHNICAL, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:06-cv-1265 |
| | ) Judge Thomas M. Hardiman |
| THE AMERICAN COAL COMPANY, | ) ) |
| Defendant. | ) ) ) |

## ORDER

AND NOW, this 17th day of November, 2006, upon due consideration of Defendant's Motion to Dismiss and to Transfer Venue (Doc. No. 4), the response thereto (Doc. No. 7), and the reply thereto (Doc. No. 9), it is hereby

ORDERED that Defendant's Motion is DENIED.

It is further ORDERED that Defendant's Answer to Plaintiff's Complaint shall be filed on or before December 8, 2006.

BY THE COURT:

*Thos M. Hardiman*

Thomas M. Hardiman
United States District Judge